**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| JAY VALINSKY, Individually and on Behalf of All Others Similarly Situated, | |
| *Plaintiff,* | Case No. |
| v. | **CLASS ACTION** |
| JOHNSON & JOHNSON CONSUMER, INC. and PUBLIX SUPERMARKETS, INC. | **COMPLAINT JURY TRIAL** |
| *Defendants.* | **DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Jay Valinsky ("Plaintiff"), individually and on behalf of all others similarly situated, files this Class Action Complaint ("CAC") against Defendant Johnson & Johnson Consumer, Inc., ("Defendant" or "JJCI") and Publix Supermarkets, Inc. ("Defendant" or "Publix"), and in support states the following.

## NATURE OF THE ACTION

1.      This is a class action lawsuit by Plaintiff on behalf of himself and all others similarly situated who purchased phenylephrine medicine, branded products, containing phenylephrine, which include Tylenol and Sudafed branded medicine that were manufactured, marketed, labeled, distributed, and sold by Defendant JJCI ("Product" or "Products"). The above-described group of persons who purchased the Products are to be referred to as the Class or Class Members.

2.      These Products are designed and heavily marketed to combat sinus congestion,

1

among other symptoms associated with the common cold and other viral infections. The principal active ingredient of the Drug is phenylephrine.  In truth, however, the Products and their active ingredients are wholly ineffective, and no better than a placebo, at alleviating nasal and sinus congestion.

3.      According to an FDA report published in September 2023, 242 million packages or bottles of phenylephrine products were sold in 2022, resulting in $1.76 billion in sales. See, *https://www.fda.gov/media/171915,* report at page 67.

4.      Plaintiff brings this action against the Defendants JJCI and Publix due to Defendants' fraud, false marketing, false advertising, breach of contract, breach of warranty, and breaches of state law consumer protection statutes.

5.      Defendant JJCI is a multinational corporation that owns and operates a "Consumer Health" division that markets and sells a family of over-the-counter medicines that include the *Tylenol* and *Sudafed* family of cold, flu and allergy products. *See* Johnson & Johnson Form 10-K filed on January 1, 2023, found at *https://johnsonandjohnson.gcs-web.com*.  In truth, however, the Products are ineffective and do not actually treat the symptoms for which the Products are advertised and marketed.

6.      Defendant Publix owns and operates approximately 1,400 stores in the United States, with over 870 Publix stores located in Florida.

7.      Through Defendant JJCI's own marketing, JCCI's self-described "Consumer Health" division targets consumers who are ill and desperate to find over the counter medicines to alleviate painful nasal and sinus issues.

8.      Publix, through its retail stores, online shopping site, and print advertising, targets consumers who are ill and desperate to find over the counter medicines to alleviate painful sinus and

nasal congestion. Publix markets and sells the Products as effective for treating sinus and nasal congestion alongside Publix's own store-brand family of sinus and cold medicine products that contain phenylephrine and which carry the Publix trademark and which Publix labels as sinuspressurepain&cough, nasaldecongestant, Multi-symptomcoldrelief, and sinusrelief. Through Publix's supermarkets and Publix pharmacies located throughout Florida and the U.S., Publix markets and sells the Products manufactured by Defendant JJCI, as well as Publix's own store brand products containing phenylephrine, as effective for treating nasal and sinus congestion.

9.      To add insult to injury, Products marketed and sold by Defendants containing phenylephrine replaced other medicines containing a different active ingredient, pseudoephedrine, that were truly effective drugs for treating sinus and nasal congestion.[1]

.

## JURISDICTION AND VENUE

10.     This Court possesses subject-matter jurisdiction to adjudicate the claims set forth herein under the provisions of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are members of the Class who are diverse from Defendants, and (4) there are more than 100 class members.

11.     This Court has personal jurisdiction over Defendant Publix because Publix is a Florida Corporation with its principal place of business located in Florida.

12.     In addition, Defendants Publix and JJCI operate, conduct, engage in, or carry on a business or business venture in this state or have an office or agency in this state.

---

[1] National Institute of Health: https://www.ncbi.nlm.nih.gov/pmc/articles.

13.     In addition, Defendants Publix and JJCI committed a tortious act within this state and breached a contract within this state.

14.     In addition, Defendants Publix and JJCI caused injury to persons within this state arising out of acts or omissions by the Defendants outside this state while the Defendants were engaged in solicitation or service activities within this state, or products, materials, or things processed, serviced, or manufactured by the Defendants were used or consumed within this state in the ordinary course of commerce, trade, or use.

15.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Plaintiff resides in this district, purchased the Products at a Publix store in this district, Defendants transact business in this district, the injuries and damages to Plaintiff arising from the acts alleged herein occurred in this district, and Defendants are subject to personal jurisdiction in this district.

16.     Additionally, Defendants have advertised in this district and have received substantial revenue and profits from sales of Products in this district; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

## PARTIES

17.     Plaintiff is an individual and resident of Palm Beach County, Florida.

18.     At all times relevant, Plaintiff purchased the Products from his local Publix store in Boca Raton, Florida.

19.     Unfortunately, Plaintiff was suffering from nasal and sinus congestion and purchased Products produced by Defendant JJCI at Defendant Publix's store to treat such nasal and sinus issues.

20.     Plaintiff used the Products to treat his nasal and sinus congestion but experienced no relief.

21.    Plaintiff, along with many others, spent substantial sums of money on these Products based on Defendants' marketing and advertising, and believing that the medicine would actually help relieve his sinus congestion and pain.

22.    Defendant JJCI is a New Jersey corporation, with its principal place of business located in the state of New Jersey at 199 Grandview Road, Skillman, NJ 08558.

23.    Defendant Publix is a Florida Corporation with its principal place of business located in Lakeland, Florida.

24.    For years, Defendant JJCI has touted its Products as being effective for the relief of nasal and sinus congestion.

25.    For years, Publix has marketed and sold to consumers Defendant JJCI's Products in its Publix supermarket stores and pharmacies and through Publix's online shopping website as effective for relieving nasal and sinus congestion. At the same time Publix also manufactured, marketed and sold its own Publix branded medicines containing phenylephrine as being effective for the relief of nasal and sinus congestion.

26.    Defendant JJCI has profited largely off the sale of these Products, with total revenue from phenylephrine products exceeding $1 Billion.

27.    Defendant JJCI knew that its Products were defective and wholly ineffective for treating nasal and sinus congestion.

28.    Defendant Publix, having been in the business of marketing and selling its own family of branded medicines containing phenylephrine, sold the Products while knowing that the Products were wholly ineffective for treating nasal and sinus congestion.

## FACTUAL ALLEGATIONS

**A. PLAINTIFF'S EXPERIENCE**

29.     Plaintiff purchased the Products including the Product shown in images below from his local Publix store located at the Garden Shops in Boca Raton, Florida.

30.     Specifically, in 2023, Plaintiff purchased Tylenol Sinus + Headache, containing phenylephrine, from Publix as demonstrated in packaging shown below:

(Space Intentionally Left Blank)







31.     In addition, Plaintiff purchased Sudafed PE Sinus Tablets in 2023 from his local Publix store located in the Garden Shops in Boca Raton, Florida. The packaging is depicted in the image below taken from Publix's online shopping website. Tylenol Sinus and Headache and Sudafed PE Sinus Tablets are Products within Defendant JJCI's family of Products that contain phenylephrine as their active ingredient and which Defendant JJCI, through its consumer health division, and Publix through its retail stores, market and sell as an effective treatment for relieving sinus and nasal congestion.



(https://www.publix.com/pd/sudafed-pe-congestion-maximum-strength-10-mg-tablets/RIO-PCI-3120920)

32.     When Plaintiff ingested these Products, his nasal and sinus conditions were not improved, and Plaintiff received no relief.

33.     Plaintiff would not have purchased these Products had he known what Defendants JJCI and Publix knew but failed to disclose: that the Products' active ingredient, phenylephrine,

was wholly ineffective for treating or relieving sinus and nasal congestion.

34.     Plaintiff was financially harmed by the Products.

**B.  FACTS SPECIFIC TO DEFENANTS' MISCONDUCT**

35.     The human sinuses are an intricate network of hollow cavities located in the skull above and below the eyes, which play a critical role in the body's respiratory system. They are lined with a thin layer of mucus that traps dust, germs, and other particles that enter the nasal tract. However, due to their sensitivity to changes in inhaled air temperatures and exposure to contaminants, they are prone to inflammation and infection, which can result in conditions like congestion and sinusitis, resulting in severe pain and discomfort.

36.     Defendants JJCI and Publix knew or reasonably should have known that the Products were ineffective at treating sinus and nasal congestion.

37.     A multitudinous volume of study after study published in industry and scientific journals as early as 2009 regarding the same active ingredient contained in the Products were addressed and shown to be ineffective *https://www.fda.gov/media/171915, at 5.3.2.*

38.     Studies and scientific papers began accumulating evidence demonstrating that phenylephrine products were simply ineffective at relieving sinus and nasal congestion. For example, a study published in the September – October, 2015, issue of *The Journal of Allergy and Clinical Immunology: In Practice*, concluded that oral phenylephrine, the active ingredient in the Products, was ineffective for the treatment of nasal congestion.[2]

39.     Nevertheless, Defendants JJCI and Publix continued to market and advertise the Products to the public at large as unequivocally effective for treating nasal and sinus congestion despite knowing that phenylephrine is ineffective as a treatment for sinus/nasal conditions.

---

[2] https://pharmacy.ufl.edu/2015/10/14/uf-researchers-ask-fda-to-remove-non-prescription-decongestant-from-the-market/

*https://www.fda.gov/media/171915.*

40.     Defendant Publix, with its own brand of products containing phenylephrine and which it markets and sells as effective for relieving nasal and sinus congestion, was aware of studies published in industry and scientific journals, including the studies referenced above, that clearly demonstrated that oral phenylephrine was ineffective for the treatment of nasal and sinus congestion.

41.     Despite knowing that products containing phenylephrine are ineffective for the treatment of sinus and nasal congestion, Publix marketed and sold to consumers in Florida and throughout the United States JJCI's family of Products as effective for treating and relieving nasal and sinus congestion.[3]

42.     To get relief from the pain and discomfort from nasal and sinus congestion, consumers like the Plaintiff take sinus medicines that are marketed and advertised as helping to relieve congestion, such as the Products.

43.     For decades, consumers bought and ingested medicines containing Pseudoephedrine, an active ingredient that had been shown to be effective for treating sinus and nasal congestion; however, this ingredient became restricted for over-the-counter use. Phenylephrine became the predominant ingredient in products like the Products starting in 2005, when legislation restricted access to over-the-counter drugs with pseudoephedrine. Prior to this, oral phenylephrine was rarely used.[4]

44.     "Phenylephrine gained popularity in the early 2000s as a replacement for pseudoephedrine, the decongestant used in Sudafed, which was moved behind the pharmacy

---

[3] https://www.publix.com/pd/sudafed-long-acting-nasal-decongestant-120-mg-12-hour-non-drowsy-coated-caplets/RIO-PCI-165825; https://www.publix.com/pd/tylenol-sinus-severe-caplets-for-adults/RIO-PCI-138020
[4] https://www.cnn.com/2023/09/12/health/phenylephrine-tablets-ineffective-fda-panel-says/index.

counter in 2006 in an attempt to curb its misuse as an ingredient to make methamphetamine."[5]

45.     Pseudoephedrine was an effective over the counter medicine for relieving sinus and nasal congestion. Unfortunately, the pseudoephedrine drugs were moved behind the pharmacy counters because a burgeoning criminal industry had arisen that used the ingredients to create and sell the highly destructive and illicit drug methamphetamine.

46.     Once the products were removed, products containing phenylephrine were advertised and marketed by Defendants as a replacement and the Products of choice for treating sinus and nasal congestion.

47.     For years, Defendant JJCI and Defendant Publix have been acutely aware that the Products were ineffective for relieving nasal and sinus congestion but chose to place profits over people rather than disclosing the truth to the consuming public. Defendants continue, even through today, to advertise, market and sell the Products as effective for treating sinus and nasal congestion. The Products are ineffective because the active ingredients do not survive the human stomach conditions and never reach the bloodstream.

48.      In sum, the active ingredient in the Products that is marketed and advertised to relieve nasal and sinus congestion fails because it does not enter the bloodstream in sufficient quantity to have any effect on the causes of nasal and sinus congestion.

49.     An FDA report in September 2023 summarized data known to industry insiders and peddlers of the Products such as the Defendants for nearly a decade that showed Defendants' statements made in their marketing and advertising to consumers, including the statements contained on the Product packaging and labels, to be false and misleading:

[C]oncentrations of phenylephrine in this [2015] study, even after 3 times the

---

[5]https://pharmacy.ufl.edu/2015/10/14/uf-researchers-ask-fda-to-remove-non-prescription-decongestant-from-the-market/.

maximum FDA approved OTC dose, were associated with no cardiovascular measurements outside normal limits. The plasma concentrations were too low to influence the vasculature, including the nose and sinuses. These data suggest that doses up to three times the labeled OTC [sic] for oral phenylephrine are unlikely to be effective as a nasal decongestant.[6]

50.     Defendants marketed and advertised the Products to the consuming public as safe, effective, and a viable substitute for pseudoephedrine, but which were instead wholly ineffective.

51.     In addition to wasting time and money, the Products expose their users to the risk of adverse side effects such as nervousness, upset stomach, trouble sleeping, dizziness, lightheadedness, headache, fast or pounding heartbeat, trembling, and weakness. *https://www.mayoclinic.org/drugs-supplements/pseudoephedrine-oral-route/side-effects/drg-20067942?p=1.*

52.     At bottom, these Products are ineffective and unsafe. The Products are fraudulently marketed as safe and effective by JJCI and Publix when Defendants knew, based on industry and scientific research, that the Products were ineffective.

53.     Consumers who purchase the Products expect that the Products will work and thereby delay or avoid taking other medications that are truly effective in relieving nasal and sinus congestion. As a result, consumers are exposed to prolonged sinus congestion that can lead to chronic illness.

## CLASS ALLEGATIONS

54.     Plaintiff brings this action on behalf of himself, and all others similarly situated pursuant to Rule 23(a) and Rule 23 (b)(3) of the Federal Rules of Civil Procedure. Plaintiff seeks class certification on behalf of the classes defined as follows ("the Nationwide Class" and the "Florida Class").

---

[6] *https://www.fda.gov/media/171915.*

**Nationwide Class Against JJCI:** All persons in the United States who purchased the Products from 2016 to the Present.

**Florida Class against JJCI:** All persons in Florida who purchased the Products from 2016 to the present.

**Nationwide Class Against Publix:** All persons in the United States who purchased the Products from Publix from 2016 to the Present.

**Florida Class Against Publix:** All persons in Florida who purchased the Products from Publix from 2016 to the present.

55. Excluded from the Class are any Defendants, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice or judicial officer presiding over this matter and Plaintiff's counsel.

56. The Nationwide Classes and Florida Classes shall be referred to collectively as the "Class". Proposed Members of said Classes will be referred to as "Class Members", or otherwise referenced as "members of the Class."

57. **Numerosity:** The members of the Class are so numerous that joinder of all members of the Class is impracticable. Plaintiff is informed and believes that the proposed Class contains thousands of purchasers who have been damaged by Defendants' conduct as alleged herein. The precise number of Class Members is unknown to Plaintiff at this time.

58. **Typicality:** Plaintiff's claims are typical to those of all Class Members because members of the Class are similarly injured through Defendants' uniform misconduct described above and were subject to Defendants' deceptive claims. Plaintiff is advancing the same claims and legal theories on behalf of himself and all members of the Class.

59.     **Commonality:** Plaintiff's claims raise questions of law and fact common to all members of the Class, and they predominate over any questions affecting only individual Class Members. The claims of Plaintiff and all prospective Class Members involve the same alleged defect and lack of effectiveness for treating nasal and sinus congestion. These common legal and factual questions include, but are not limited to, the following:

a.     Whether the Products are defective and/or ineffective for their stated purpose;

b.     Whether Defendants knew or should have known that the Products were defective and/or ineffective prior to Defendants' marketing and selling the Products as effective;

c.     Whether Defendants wrongfully represented, and continue to represent, that the Products are free of defect and effective at relieving nasal and sinus congestion;

d.     Whether Defendants' omissions are true, or are misleading, or objectively reasonably likely to deceive;

e.     Whether Defendants' advertising and marketing of the Products are false, deceptive, and misleading;

f.     Whether those representations are likely to deceive a reasonable consumer;

g.     Whether a reasonable consumer would consider the risk of suffering known side effects if Defendants had truthfully disclosed that the Products are ineffective for treatment of nasal and sinus congestion;

h.      Whether Defendants were unjustly enriched;

i.     Whether Defendants breached express warranties;

j.      Whether Defendants breached implied warranties;

k.     Whether Plaintiff and the Class Members are entitled to damages and the proper measure of damages; and,

l.      Whether Plaintiff and Class Members are entitled to injunctive relief to prevent Defendants from continuing to market and sell the Products as effective for the treatment of sinus and nasal congestion.

61.     **Adequacy:** Plaintiff and his counsel will fairly and adequately protect and represent the interests of each member of the Class. Plaintiff has retained counsel experienced in complex litigation and class actions. Plaintiff's counsel has successfully litigated other class action cases similar to the matters at issue in this case and has the resources and abilities to fully litigate and protect the interests of the Class. Plaintiff intends to prosecute these claims vigorously and to the fullest extent permitted by law. Plaintiff has no adverse or antagonistic interests to those of the Class, nor is Plaintiff subject to any unique defenses.

62.     **Superiority:** A class action provides a superior, fair and efficient method for the adjudication of the instant controversy for the following reasons:

a.      The common questions of law and fact set forth above predominate over any questions affecting only individual Class Members;

b.      The proposed class is so numerous that joinder would prove impracticable. The proposed class, however, is not so numerous as to create manageability problems; moreover, no unusual legal or factual issues render the class unmanageable.

c.      Prosecution of separate actions by individual members of the class would risk inconsistent and varying adjudications against either on or both Defendants;

d.      The claims of the individual Class Members are small in relation to the expenses of litigation, making a class action the only procedure in which Class Members can, as a practical matter, recover for the damages done to them by Defendants.

e.      A class action would be superior to, and more efficient than, adjudicating thousands of individual lawsuits.

63.     In the alternative, the proposed classes may be certified because:

a.      the prosecution of separate actions by the individual members of the proposed classes would create a risk of inconsistent or varying adjudication with respect to individual Class Members, which would establish incompatible standards of conduct for Defendants;

b.      the prosecution of separate actions by individual Class Members would create a risk of adjudications dispositive of the interests of other Class Members not parties to the adjudications and substantially impair or impede their ability to protect their interests; and

c.      Defendants have acted or refused to act on grounds generally applicable to the proposed class, which justifies final and injunctive relief for the members of the proposed class as a whole.

64.      Plaintiff seeks preliminary and permanent injunctive relief to prevent Defendants from continuing to market and sell the Products that are defective and not effective for their intended use. Plaintiff seeks a full refund of the purchase price of the Products sold to Plaintiff and the Class Members.

65.     Absent a Class-wide injunction, Defendants will continue to violate the law to the detriment and harm of Plaintiff and members of the Class.

## ESTOPPEL FROM PLEADING AND TOLLING OF APPLICABLE STATUE OF LIMITATIONS

66.     Defendants possess superior knowledge about the ineffectiveness of the Products,

16

including from industry studies and scientific journals regarding phenylephrine that were not reasonably available to consumers, the Plaintiff, and the proposed Class Members.

67.     Defendants are estopped from relying on any statutes of limitation or repose due to its acts of concealment. Defendants knew about the defect and lack of effectiveness in the Products for years and should have ceased advertising and marketing the Products as effective for treating sinus and nasal congestion at least as early as 2015. Instead, Defendants concealed the truth about the Products and/or failed to alert consumers. Plaintiff and Class Members could not reasonably have known or have been expected to research and review scientific, academic, or industry journals and studies about the existence of the defect which contradicted the information contained in Defendants' readily accessible marketing and advertising campaigns and the Product labels. Thus, Defendant is estopped from relying on any statutes of limitations or repose that might otherwise be applicable to the claims or to the relevant Class period asserted herein.

**CAUSES OF ACTION**

**COUNT I**
**Negligence**
**(On Behalf of the Plaintiff and the Class against JJCI and Publix)**

68.     Plaintiff incorporates Paragraphs 1 - 6 7 above as though fully set forth herein.

69.     Defendants have a duty to provide and sell safe and effective Products to consumers.

70.     Defendant JJCI breached this duty by designing, producing, marketing, and selling Products that are not safe and effective.

71.     Defendant Publix breached this duty be marketing and selling the Products that are not safe and effective.

72.     Defendants' breaches of duty to provide and sell only Products that are safe and

effective caused damages to Plaintiff.

73.     Plaintiff was damaged in that he lost the benefit of the bargain, has suffered economic loss through the Defendants 'retention of the funds he paid for the Products, has suffered inconveniences due to the extended denial of relief from sinus conditions.

74.     Defendants' breaches of duty were the direct and proximate cause of Plaintiff's damages.

75.     But for Defendants' breaches of duty Plaintiff and the Class would not have been damaged.

76.     In addition, it is foreseeable that producing and selling an unsafe or ineffective medication would cause damages as Plaintiff and the Class purchased the Products to obtain relief from sinus congestion and the ineffective Products would not provide Plaintiff and the Class the very relief for which the Products were purchased and for which the Products were marketed and sold.

77.     Due to Defendants' conduct, Plaintiff was damaged in that Plaintiff has been deprived of the essential benefits despite having paid the purchase price.

**<u>COUNT II</u>**
**Negligent Misrepresentation**
**(On Behalf of Plaintiff and the Class against JJCI and Publix)**

78.     Plaintiff realleges and incorporates Paragraphs 1 - 67 above as though fully set forth herein.

79.     Through their advertising and in the course of their normal and routine business practices, Defendants made representations to Plaintiff and the Class concerning the quality and effectiveness of the Products.

80.     Defendant JJCI failed to exercise reasonable and due care in the design,

18

manufacturing, production, sale, and marketing of the Products.

81.     Defendant Publix failed to exercise reasonable and due care in the marketing, advertising, and sale of the Products.

82.     Defendants made uniform and consistent statements to consumers regarding the Products' effectiveness for treating and relieving nasal and sinus congestion in order to induce consumers to buy the Products.

83.     Defendants knew that such statements would be relied upon and induce Plaintiff and the Class to purchase the Products.

84.     Plaintiff and the Class would not have purchased the Products without such positive statements and claims regarding the Products' efficacy for treating nasal and sinus congestion made by the Defendants.

85.     Defendants intended that Plaintiff and the Class rely on the representations made by Defendants regarding the Products.

86.     Plaintiff reasonably relied upon such representations and omissions to his detriment and suffered damages.

87.     Plaintiff and Class Members have suffered damages in an amount to be proven at trial.

88.     Due to Defendants' conduct, Plaintiff was damaged by having been deprived of receiving any of the intended benefits from the Product while paying the purchase price.

**COUNT III**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class against JJCI and Publix)**

89.     Plaintiff realleges and incorporates Paragraphs 1-67 above as though fully set forth herein.

90.     Plaintiff and the Class conferred a benefit upon Defendants in the form of money paid in exchange for the Products.

91.     The benefits conferred by Plaintiff were not gifts or otherwise gratuitous; rather the conferral was in the form of money paid to Defendants in exchange for the purchase of the Products.

92.     As a result of Defendants' wrongful and deceptive conduct alleged herein, Defendants knowingly and voluntarily accepted and retained benefits in the form of money paid by the Plaintiff and members of the Class for the purchase of the Products.

93.     In so doing, Defendants acted with conscious disregard for the rights of Plaintiff and members of the Class.

94.     Plaintiff and the Class paid for Products that were effective, Products whose primary purpose was to provide safe and effective relief of sinus/nasal congestion. Instead, Plaintiff received Products that were ineffective and failed to treat the conditions for which the Products were intended.

95.     As a result of Defendants' wrongful conduct as alleged herein, Defendants have been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Class.

96.     Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

97.     It would be unjust and inequitable for Defendants to be permitted to retain the benefits they received, and are still receiving, from the false and deceptive manufacturing, labeling, advertising and marketing of the Products to Plaintiff and members of the Class.

98.     The financial benefits derived by Defendants rightfully belong to Plaintiff and

members of the Class.

99.     Defendants are obligated and should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the Class all proceeds received from the purchase of the Products.

<u>COUNT IV</u>
**Breach of Express Warranty**
**(On Behalf of Plaintiff and the Class against JJCI and Publix)**

100.     . Plaintiff realleges and incorporates Paragraphs 1-67 above as though fully set forth herein.

101.     As detailed above, Defendants, through advertising and marketing expressly warranted that the Products were for the purposes intended, that they were of merchantable quality, and that they actually provided sinus/nasal congestion relief. Moreover, the description for the Products represents the uses for which these Products are intended, i.e. providing relief from sinus/nasal congestion. Such statements constitute an affirmative promise that these Products will indeed provide sinus and nasal congestion relief.

102.     Defendants breached this express warranty by providing, marketing and selling Products that were ineffective and could not provide such promised relief.

103.     Plaintiff and the other Class Members read and relied on these express warranties provided by Defendant JJCI in the description of the Product and subsequent advertisements and marketing of the Products by JJCI and Publix.

104.     Defendants breached the express warranties because the Products at issue are defective and unfit for their intended use.

105.     Defendants' breach of warranty proximately caused damage as it is foreseeable that such defective Products, incapable of delivering on their warranties, would deprive Plaintiff

of the benefits despite Plaintiff's payment of monies paid for such Products.

106.   Plaintiff and the other Class Members have suffered harm on account of Defendants' breach of express warranty regarding the fitness for the specified use of the Products.

107. Plaintiff and the other Class Members are entitled to damages.

<u>**COUNT V**</u>
**Breach of Implied Warranty of Fitness for A Particular Purpose**
**(On Behalf of Plaintiff and the Class against JJCI and Publix)**

108.   Plaintiff realleges and incorporates Paragraphs 1-67 above as though fully set forth herein.

109.   Defendants marketed and advertised the Products to be purchased and used to provide sinus/nasal congestion relief in the form of relief from sinus pressure and congestion. Thus, the Products were of a particular purpose.

110.   Defendants knew of this particular purpose as Defendant JJCI produced, marketed, sold, and advertised the Products as effectively providing sinus/nasal congestion relief, and Publix advertised, marketed and sold the Products as effective for providing relief from sinus and nasal congestion. .

111.   Defendants knew that consumers like Plaintiff would reasonably rely on this promise of particularity as Defendants were aware of the claims made regarding specificity and that consumers like Plaintiff would purchase the Products in reliance of the specific claims made.

112.   Plaintiff relied on Defendants' skill and capability to provide such a specific product.

113.   Due to Defendants' conduct, Plaintiff was damaged in that Plaintiff has been deprived of his benefit of the bargain and has lost the funds used to pay the purchase price.

22

## COUNT VI
### Breach of implied Warranty of Merchantability
### (On Behalf of Plaintiff and the Class against JJCI and Publix)

114.    Plaintiff incorporates Paragraphs 1-67 above as though fully set forth herein.

115.    Defendants sold the Products to Plaintiff and other consumers.

116.    Plaintiff is a person who is reasonably expected to use such Products, given that the Products were sold to the public and Plaintiff is a consumer.

117.    Defendants are in the business of producing, marketing and selling over the counter medications to consumers.

118.    Defendants marketed and advertised the Products as safe and effective for treating and relieving sinus/nasal congestion to Plaintiff and other consumers.

119.    The Products were not merchantable at the time of sale given that they did not provide sinus/nasal condition relief, as marketed and promised by Defendants.

120.    This lack of merchantability is a breach of warranty.

121.    This breach both factually and proximately caused damages to Plaintiff through loss of funds expended to purchase the Products and the deprivation of the benefit of the bargain.

## COUNT VII
### Breach of Contract
### (On Behalf of Plaintiff and the Class against JJCI and Publix)

122.    Plaintiff realleges and incorporates Paragraphs 1-67 above as though fully set forth herein.

123.    Through their marketing, advertisements, and promises, Defendants created a contract with Plaintiff.

124.     Plaintiff was to receive Products that provided sinus/nasal condition relief in exchange for the purchase price of the Products.

125.     Plaintiff performed his obligation under the contract by paying the purchase price of the Products directly to Defendant Publix, which sold the Products through Publix's retail stores.

126.     Defendants failed to perform their obligations under the contract in that the Products failed to effectively treat and provide relief for sinus/nasal congestion.

127.     Plaintiff and the Class have been damaged as a direct and proximate result of Defendants' breach.

## COUNT VIII
### Strict Product Liability for Misrepresentation
### (On Behalf of Plaintiff and the Class against JJCI and Publix)

128.     Plaintiff incorporates Paragraphs 1-67 above as if fully set forth herein.

129.     At all relevant times Defendants were engaged in the business of selling sinus/nasal congestion relief medications, including the Products.

130.     Defendants made material misrepresentations that the Products provided sinus/nasal congestion relief to those who purchased the Products.

131.     Defendants' misrepresentations were material because the essential nature of the Products were touted as being safe and effective for treating and relieving nasal and sinus congestion. Defendants knew the truth but failed to disclose the truth to Plaintiff and the consuming public. Had Defendants truthfully disclosed that the Products were not effective for such purposes, Plaintiff would not have purchased the Products.

132.     Defendants' misrepresentations were uniformly made to the Plaintiff, the public at large, and potential consumers through Defendants' television, print, online, and in-

store advertising and marketing.

133.    Plaintiff was and is a person who reasonably expected to use the Products as advertised and marketed by Defendants.

134.    It is and was reasonably foreseeable by the Defendants that Plaintiff and the Class would be harmed by Defendants' misrepresentations.

135.    Plaintiff suffered damages due to Defendants' misrepresentation in that Plaintiff did not receive from Defendants the benefits that prompted the Plaintiff to purchase the Products and despite not receiving such benefits, Plaintiff paid the full retail purchase price for the Products.

**COUNT IX**
**Fraud**
**(On Behalf of Plaintiff and the Class against JJCI and Publix)**

136.    Plaintiff incorporates Paragraphs 1-67 above as if fully set forth herein.

137.    Defendants made fraudulent misrepresentations of material fact in that Defendants advertised, marketed, sold, and promised Plaintiff an over-the-counter medicine that would provide relief for sinus and nasal congestion while knowing that those representations were false.

138.    Defendants represented to Plaintiff and the Class that the Products do in fact provide relief for sinus and nasal congestion. Defendants' representations are material because the representations go to the essential purpose for which the Products were purchased and absent such a representation and promise, Plaintiff would not have purchased the Products.

139.    Had Plaintiff known of the truth that the Products were ineffective for their intended purpose, Plaintiff would not have purchased the Products.

140.    Plaintiff relied on Defendants' misrepresentations in his decision to purchase the Products.

141.     Plaintiff was justified in relying on the misrepresentations as providing accurate information regarding the Products' efficacy for treating and relieving nasal and sinus congestion.

142.     Plaintiff has suffered damages as a direct and proximate result of Defendants' conduct alleged herein as Plaintiff paid for the Products, expended funds stemming from the purchase price, and delayed in obtaining treatment that would have been effective in treating his sinus conditions.

## COUNT X
### Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") Fla. Stat. §§ 501.201, *et seq.* (On behalf of Plaintiff and the Class against JJCI and Publix)

143.     Plaintiff incorporates Paragraphs 1-67 above as if fully set forth herein.

144.     Plaintiff and Class Members who purchased the Products are "consumers" as defined under FDUTPA.

145.     Defendants' practices, acts, policies and course of conduct violated FDUTPA's prohibition on unfair and deceptive conduct in that:

a.     At the time of Plaintiff's purchase, Defendants knowingly and intentionally omitted and concealed material information regarding the Products by failing to disclose to Plaintiff and Class Members that the Products were ineffective for the treatment or relief of nasal and sinus pressure and congestion. Defendants had a duty to disclose and notify Plaintiff prior to or at the point of sale that the Products were ineffective for relieving sinus and nasal congestion but failed to make any disclosure whatsoever and instead made statements completely contrary to the truth.

b.     Thereafter, Defendants failed to disclose the defective nature of the Products to Plaintiff and the Class Members, either through warnings or notices, and/or actively concealed from them that the Products were defective and ineffective for treating

or relieving symptoms of nasal and sinus congestion.

        c.     Based on studies reviewed by and known to Defendants regarding phenylephrine, Defendants knew with certainty that the primary active ingredient in its Products for treating sinus and nasal congestion simply did not work.

146.    Furthermore, Defendants engaged in materially misleading and deceptive acts by continuing to market and sell the Products to the consuming public and to represent that these Products were effective, despite Defendants' knowledge that the Products would not work as intended, represented, and warranted and that the above-described defects would cause purchasers to spend money on Products with potentially harmful side effects that would fail to provide the benefits for which the Products were purchased.

147.    Defendants' acts and omissions are unfair in that they (1) offend public policy; (2) are immoral, unethical, oppressive, or unscrupulous; and (3) cause substantial injury to consumers. Defendant has, through knowing, intentional, material omissions, concealed the true defective nature of the Products.

148.    Defendants' acts and omissions are also unfair in that they cause substantial injury to consumers far in excess of any conceivable benefit; and subject consumers to harm that could have been reasonably avoided.

149.    Defendants' acts and omissions are deceptive in that Defendants have, through knowing, intentional, material omissions, concealed the truth regarding the ineffectiveness of the Products. In making these misrepresentations of fact and/or material omissions to consumers, customers and prospective customers while knowing such representations to be false, Defendant has misrepresented and/or knowingly and intentionally concealed material facts in breach of its duty not to do so.

150.    Plaintiff and other members of the public were deceived by Defendants' failure to disclose and could not discover the defect themselves, or avoid the injurious consequences of the defects, before suffering their injuries. But for Defendants' deception, Plaintiff and the Class would not have bought the Products or would have paid substantially less for them.

151.    As a direct and proximate result of these unfair and deceptive acts or practices, Plaintiff and Class Members have been damaged.

**COUNT XI**
**Fraudulent Concealment**
**(On Behalf of Plaintiff and the Class against JJCI and Publix)**

152.    Plaintiff incorporates Paragraphs 1-67 above as if fully set forth herein.

153.    Defendants concealed and failed to disclose the truth regarding the Products— that they were in fact ineffective for treating or relieving sinus and nasal congestion.

154.    Defendants knew or should have known that the fact that the Products were defective and ineffective in treating sinus and nasal congestion should be disclosed.

155.    The omitted facts were material because the omissions go to the essential purpose for which the Products were purchased and had the truth been disclosed Plaintiff would not have purchased the Products.

156.    Defendants knew that by continuing to conceal the truth about the effectiveness of the Products, Plaintiff and the Class Members would be induced to purchase the Products.

157.    Had Plaintiff known of the truth that the Products were ineffective for their intended purpose, Plaintiff would not have purchased the Products.

158.    Plaintiff was justified in relying on the misrepresentations as providing accurate information regarding the Products' efficacy for treating and relieving nasal and sinus congestion.

159.    Plaintiff has suffered damages as a direct and proximate result of Defendants'

conduct alleged herein as Plaintiff paid for the Products, expended funds stemming from the purchase price, and delayed in obtaining treatment that would have been effective in treating his sinus conditions.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, on behalf of himself and the proposed Class hereby demands judgment against Defendants with respect to each cause of action alleged above, including the following:

A.      An order declaring this action to be a proper class action, appointing Plaintiff and his counsel to represent the Class, and requiring Defendants to bear the costs of class notice;

B.      An order enjoining Defendants from selling the Products;

C.      An order enjoining Defendants from suggesting or implying that the Products are effective for their intended purpose of providing effective relief for sinus and nasal congestion;

D.      An order requiring Defendants to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief;

E.      An order awarding declaratory relief and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendants from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendants' past conduct;

F.      An order requiring Defendant JJCI to pay damages relating to all Products and requiring Publix to pay damages relating to the Products sold by Publix, to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, plus pre- and post-judgment interest;

G.      An order requiring Defendants to pay back any benefits received from Plaintiff

and members of the Class as a result of any wrongful or unlawful act or practice;

H. An order requiring Defendants to pay all actual and statutory damages permitted under the counts alleged herein;

I. An order awarding attorneys' fees and costs to Plaintiff and Class; and

J. An order providing any and all other relief as may be just and proper.

### DEMAND FOR JURY TRIAL

The Plaintiff and each Class demands trial by jury of all issues so triable as a matter of right.

Respectfully submitted,

THE MILIAN LEGAL GROUP, P.A.

By: */s/ David P. Milian*
David P. Milian, Esq. (Fla. Bar No. 844421)
Email: david@lawmilian.com
Secondary: elizabeth@milianlaw.com
Secondary: DavidMilian@Milian-legal.com
1395 Brickell Avenue, Suite 800
Miami, FL 33131
Tel: (786) 808-9736
*Counsel for Plaintiff and the Class*